UNITED STATES v. 5.741 ACRES OF LAND IN FLUSHING AND ARDE BULOVA et al.

No. M–724.

District Court, E. D. New York.

Aug. 9, 1943.

148

Harry T. Dolan, Sp. Asst. to Atty. Gen. (John A. Jordan, Sp. Atty., of Brooklyn, N. Y., of counsel) for petitioner-plaintiff.

Skinner & Bermant, of New York City (Bernard L. Bermant, of New York City, of counsel), for defendant Arde Bulova.

CAMPBELL, District Judge.

This is a proceeding in condemnation, to acquire a leasehold interest.

It was instituted on August 14, 1942, by the filing of a notice and petition and the granting of an order of immediate possession.

The subject property, in which the leasehold was acquired, consists of 5.741 acres of land and improvements thereon, located at the corner of Jewel Avenue and Park Drive East in the Borough of Queens, City and State of New York.

There was located on this property a three-story stucco over frame golf clubhouse, and a one-story stucco over frame partly field stone caddy house.

On the 28th day of December, 1942, there was filed in the registry of this Court a Declaration of Taking No. 1, pursuant to the provisions of Section 258a, Title 40 U. S.C.A., and a deposit, as required by law, made, for the use and occupancy of these premises for the period of June 3, 1942, through June 30, 1943, and upon the depositing of the said money in Court, an estate for the period of June 3, 1942, through June 30, 1945, in the property vested in the Government subject to cancellation by Government on June 30, 1943, or on June 30, 1944.

It has been stipulated in writing between Counsel for the Government, and the claimant, that the Government did not go into possession of the subject premises until July 21, 1942, and that the Government's liability for rent should not come into being for a period prior to July 21, 1942.

The issue tried, and to be determined by me, is the fair value of the rental of these premises on an annual basis.

This property was formerly used as a golf clubhouse, and golf clubhouse grounds.

The house was specially designed and constructed in 1928, to serve the special use required in this particular activity.

In 1938 it ceased to be a golf clubhouse, when the greens were torn up, and the sod sold, and some 50 acres of the golf club property were turned into a parking lot, and it has not been used as a golf club since the destruction of the greens, and its use as a parking lot in 1938.

One thing in particular we must not lose sight of, and that is that in this proceeding the Government is not taking the fee, but, only use and occupation, and therefore, while the value of the land and buildings thereon are important for consideration, they are not conclusive. What the Government took in the premises in question is equivalent to a leasehold, and it is the annual fair rental value per annum, which I am required to find.

Experts have been called by both sides, and they sharply disagree in the estimates of value.

It is true that the premises in question were used by the City of New York, as a temporary City Hall, and some improvements have been made therein, but, when I viewed the property, on June 19, 1943, a considerable time after the taking by the petitioner-plaintiff there was evidence of a prior bad condition, especially as to the shoring up which had been required and also as to the condition of the stucco at some points, and I believe the testimony of Sergeant Robert M. Farish, who was in charge of the maintenance, construction and repair of the property on behalf of the Government, and was there from the time the Government took over the property, and I believe his evidence as to such condition.

The height of the grade of a large portion of the property, which would entail a considerable expense to reduce it, the long distance of the property from the subway, the lack of adequate bus service, and the fact that the sewers are private sewers all reduce the value of the land, for the purpose of building apartment houses or single family houses thereon, and also the comparatively smallness of the size of the plot, as compared with the 46 acres of the Queens Valley Club, lead me to the con-

clusion that the price of $14,000 an acre, as appraised by claimant's expert, is too high, and can not be justified by the evidence as to the sales prices of other comparable property.

The land is not of the value of $80,000.

The building is not of the value of $55,000.

The rental value of the land and improvements is not $13,097.

The value of $10,000 an acre as estimated by the appraiser for the Government seems to me to be a little too low, as I find the value of the land to be $10,500 an acre, making $60,280 for the land.

█ While it is true that to a purchaser who intended to improve the property by building thereon the buildings might not add much to the value of the land, as they would have to be torn down, that is not true as to a lessee, as the buildings would add to the value for short term leasing, not only to the Government, but to any lessee, as it would be unreasonable to expect that any one would lease the premises for a short term without the building. It is not the cost of the replacement of the building new, less depreciation that is to be considered, but what it adds to the land for leasehold purposes, and that, I find, is $15,000, making the value of the land and improvements $75,280; this, capitalized at 10%, would be $7,528.00 as the annual rental on that basis.

Attention was called by claimant's counsel to the fact that the Government entered into possession before condemnation for a ten day period at a rental of $334.20, and on behalf of claimant it is contended that on an annual basis that would be a rental of $12,300.

█ That, of course, is not a correct method of arriving at the annual rental value of the premises, as it is common knowledge that a rent for a yearly term is arranged on an entirely different basis, than a rental for a period as short as 10 days. In fact, using the rental of $334.20 for 10 days as a basis of calculation, the annual rental would not be more than $7,500, with a monthly rental of not more than $625.

█ Of course, the amount that the owner must pay for taxes, water and insurance are proper subjects for consideration, but, the insurance must be based on the value I have found, that is, for a building of the value of $15,000, and not the inflated valuation claimed by the claimant, but I can see no justification for the consideration of the amounts claimed by claimant for exterior repairs or depreciation.

█ An annual rental of $7,500 would give claimant a net return of approximately 5%.

This, considering the fact that the subject premises are of the character known as Specialty is a fair return to the owner.

Of course, it is the fair market rental value that we are to ascertain, and I do not believe that the rental received of the property formerly of the Queens Valley Clubhouse is controlling, as there are too many elements present in that letting which play no part in fixing the rental value of the subject property.

I fix and determine Seventy-five hundred dollars, as the fair market annual rental value of the subject property under the conditions of the taking, as determined by the Secretary of War, viz., a leasehold interest, expiring June 30, 1945, said term to be cancellable, at the election of the petitioner-plaintiff, on June 30, 1943, or on June 30, 1944, upon sixty days' written notice to the owner, except as provided in paragraph VI of the petition for condemnation herein.

█ The request of counsel for claimant for a direction in the judgment to be entered herein permitting them to apply at the foot of the judgment, in the event of any possible injuries resulting in the taking by the Government, is denied. Such damages, if there ever be any, are speculative, and consequential, and are not compensable in a condemnation action instituted by Government.

If such speculative injuries occur, the claimant must seek relief by an original action, not in this action. United States v. 16,747 Acres of Land et al., D. C. Delaware, 50 F.Supp. 389, opinion of Leahy, District Judge, June 15th, 1943.

Settle judgment on notice.