## UNITED STATES v. 9.94 ACRES OF LAND IN CITY OF CHARLESTON et al.

### Civil Action No. 902.

District Court, E. D. South Carolina, Charleston Division.

Aug. 16, 1943.

Claud N. Sapp, U. S. Atty., of Columbia, and Ben Scott Whaley, Asst. U. S. Atty., of Charleston, for petitioner.

A. T. Smythe, George E. Grimball, and Buist & Buist, all of Charleston, for defendants.

WARING, District Judge.

In the above entitled cause the United States instituted proceedings in this court on November 18, 1942, by filing in the court a letter from the Commissioner of the Federal Public Housing Authority addressed to the Attorney General requesting condemnation of the tract described in the pleadings. At the same time the United States Attorney for this district filed his Petition for Condemnation, Lis Pendens, Declaration of Taking; and I signed and filed an Order of Judgment on this Declaration. At the same time there was deposited in the registry of the court the sum of $1,-155.53, which was stated to be the estimated compensation for the interest taken in the lands. The interest taken as set forth in the Petition is as follows: "That the estate taken for said public use is the exclusive use of the said land hereinabove described for a period of one year with the right to renew from year to year for the duration of the war emergency as determined by the President, and three years thereafter, with the right of the Government to remove all improvements at the termination of such use."

Answers have been filed by most of the defendants and various motions have been made on their behalf. I have considered all of these motions and questions raised, at one hearing, and treated the same as a pretrial conference for the purpose of attempting to ascertain the positions taken by the government and by the various owners of the properties. While many detailed questions were submitted and argued, I think it unnecessary to consider them separately or seriatim, but a general survey of the situation and an indication of my holdings on the main points will suffice to cover the case. The views hereinafter set forth are in answer to the various motions and to the request that I outline the general elements of the law, which I expect to adopt and follow and use when the cause comes on for a trial and the matter is submitted to a jury.

A preliminary matter passed upon was the motion to segregate the parcels owned by the respective defendants. At the hearing before me all parties acquiesced in the desirability of this action and the United States Attorney stated that he expected to file amended pleadings setting forth the descriptions of the various properties owned by the respective defendants. I stated that in my opinion this was proper and an appropriate order directing this has been filed.

1. The question has been raised as to whether the determination of the measure of just compensation under the Fifth Amendment of the Constitution of the United States is a judicial, or legislative, or executive function. I think there is no doubt whatsoever that this is entirely a judicial function. The Congress, and the

executive when empowered by the Congress, may determine to exercise the power of eminent domain and may determine in what manner and how and when to exercise it, but the determination of just compensation is a constitutional right and the party from whom the property is taken by condemnation proceedings is entitled to his day in court. See United States v. New River Collieries Co., 262 U.S. 341, 43 S.Ct. 565, 67 L.Ed. 1014; Seaboard Air Line Ry. Co. v. United States, 261 U.S. 299, 43 S.Ct. 354, 67 L.Ed. 664; Monongahela Navigation Co. v. United States, 148 U.S. 312, 13 S.Ct. 622, 626, 37 L.Ed. 463. In the last named case the court says: "By this legislation congress seems to have assumed the right to determine what shall be the measure of compensation. But this is a judicial, and not a legislative, question. The legislature may determine what private property is needed for public purposes; that is a question of a political and legislative character. But when the taking has been ordered, then the question of compensation is judicial. It does not rest with the public, taking the property, through congress or the legislature, its representative, to say *what compensation shall be paid, or even what shall be the rule of compensation.* The constitution has declared that just compensation shall be paid, and the ascertainment of that is a judicial inquiry." (Emphasis added.)

█ 2. I am of the opinion and so hold that the fact that the government has made an estimate of compensation and made a deposit in the court has nothing to do with the final decision as to just compensation. This is not a usurpation of judicial function. It is merely a statement of findings by the executive branch, which has taken the property under authority granted by the legislative branch, and it is to be treated on a parity with other statements in the pleadings. This is in no way binding upon the defendants or upon the court, which may proceed to exercise its full and free power to adjudicate what is the compensation to be awarded. Numerous cases could be cited to sustain this contention, but the United States Supreme Court has so recently reviewed the general matter of eminent domain that I feel it necessary to cite only the case of United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. ── .

█ 3. It is contended on behalf of certain of the defendants that the court must determine the exact nature of the estate which the government can take and that the government is not empowered to decide whether it shall take a fee simple title or something less, but that this is a duty imposed upon the court. I do not agree to this. Under the power of eminent domain the United States may exercise such power to take the whole or any part of, or any interest in, the lands in question and this right is limited only by the Acts of Congress delegating authority to the Executive. By reference to the Acts of Congress and particularly that statute known as the Second War Powers Act of 1942, Title 50 U. S.C.A.Appendix, § 632 and Executive Orders thereunder, the governmental officers of the United States are given a free hand to take property because of the war in which the country is engaged, and because of the exigencies of the armed forces and of various manufacturing, housing, and other necessities, all closely interwoven and tied into the war effort. I shall, and do, hold, that the United States is fully warranted in taking the property here in question and that the officer who caused the same to be taken was clothed with the right and power to designate the property so taken and to determine what interest, terms or part in the same is to be acquired by the United States. See United States v. Meyer, 7 Cir., 113 F.2d 387; United States v. Forbes, D.C., 259 F. 585, 590.

The foregoing, however, is all subject to the final determination by a court of competent jurisdiction as to what is the value of the interest taken. In other words, the Legislature and the executive officers determine what they want and are empowered to take it, but the court determines what is the value of what they have taken and what is the just compensation to be paid to the owners.

█ 4. Questions are raised as to whether the duration of taking is limited to the war with Germany, the war with Italy or the war with Japan, or whether it is limited to the present wars or future wars, and what is meant by the present emergency and the duration of same; and who is empowered to determine same and how this is to be done. I consider it wholly unnecessary for me to attempt to answer any of these questions. This should not be, and is not, a duty of the court. In my opinion the executive having been once clothed with the power ── and I have held that the

executive department has the power to take — is free to take what interest it desires, and has full freedom and liberty to determine what wars are meant, what emergency is meant and the duration of the taking. If the government had chosen to take and pay for a fee simple title to the property taken the fixing of compensation would have been comparatively simple and would have been governed by the ordinary rules laid down by the courts for the fixing of compensation. These have been recently summarized in the case of United States v. Miller supra, and need not be elaborated here. But if the government chooses, and it has so chosen in this case, to take some title other than a fee simple title, it certainly is at liberty to do so. It may urge before the court that such a title takes a smaller valuation and that the compensation should be less than if a fee simple title be taken. That is a question for a jury to determine. I feel that I have no right to control or curb the government in the nature of the estate which it wishes to take and which it has taken, nor is it for me to determine for how long a time the property will be held, or what will be done with it. The plaintiff by its pleading has set forth the terms under which it wishes to take this property. It has a right to name these. On the other hand, a jury under proper instructions has a right to consider what is just compensation, keeping in mind throughout the trial of course, that the government has a full, free, absolute and complete right under the taking which it has chosen, to hold and make use of the property for such duration as it wishes to specify, and with that in mind the jury will fix the compensation. In addition, it is to be considered that there is no limitation as to how, when or in what plight the property is to be returned to the owners. The fact that the property may at some date and in some condition be so returned to the owners is a fact that may be considered by a jury, and which I shall certainly submit to a jury and I shall instruct the jury that if it considers this of any value it must determine such value and deduct it from what would have been the full fee simple value of the property taken.

◼ 5. In this case the government has specified that it has taken the exclusive use of the land for a period of one year with the right to renew from year to year for the duration of the war emergency as determined by the President and for three years thereafter. The government reserves the right to remove all improvements. As above stated, I have held and shall hold that the government has the right to take the property under these conditions. It has the right to the exclusive use and there appears no limitation of any kind or character as to what this use is to be. There is nothing in the declaration or in any of the pleadings by which the government may be bound to remove any structures should they be found to be detrimental. I can find nothing in the pleadings that would prevent the government from erecting any kind of structures it chooses upon the property; it has the right to excavate or remove soil, or to make any kind of use that it chooses. In the argument before me it has been said that the government is to be assumed to be fair-minded and that it will of course treat the owners fairly. We are not dealing here, however, with speculation of what may happen. The government is operated by officers who necessarily change from time to time. The good intentions of the present officers have no binding effect upon the actions of future officers. If the owners are to be bound by the fair statements of those representing the government presently engaged in this case there would be no necessity for this litigation. We all hope to be well treated and to receive just compensation, but any one whose property is taken by the strong arm of the United States Government is entitled to rely and stand upon his constitutional rights to come into a court of competent jurisdiction and ask that matters in dispute be adjudicated and that a jury be empaneled and sworn to pass upon what compensation he shall receive. I know of no right by which the officers of the government may say one must rely upon their present assurances that they will take care of the property and improve it and return it in good condition. I shall, and do, hold, that the owners have a right to a court adjudication as to their rights and they are not in any way bound to rely upon promises of any officials of the United States in regard to the condition of the property, the upkeep of the property, the payment of taxes, the payment of street improvement assessments or any other matters in connection with the issues herein.

◼ 6. In this case the government argues that it is taking merely a leasehold for a period of one year subject to renewal from year to year and that the measure of compensation is what would be a fair rental. I have been cited to certain cases

from the Court of Claims. I do not find these at all applicable since the rules of law applicable to claims against the government are not at all the same as those to be applied in condemnation cases. See United States v. North American Transportation & Trading Co., 253 U.S. 330, 40 S.Ct. 518, 64 L.Ed. 935; Seaboard Air Line Ry. Co. v. United States, 261 U.S. 299–305, 43 S.Ct. 354, 67 L. Ed. 664. The government has likewise argued that in adopting this method of valuation the court should enter a judgment, which would in effect give the government a leasehold on the terms set out in the Declaration and fix an annual rental with appropriate provision for notice to be given the land owners within a reasonable time of the government's intention to extend its holding or to surrender the property. And it is also suggested that such a judgment should include some arrangements for the government to take care of the taxes.

This suggestion would seem to be in complete conflict with the contention heretofore argued on behalf of the government (and with which contention I agree), that the executive officers of the goverment have a right to determine, and have determined, in this case, to take the property for such time and for such use as they wish and that it is not the province of or within the power of the court to curb that. I can not see where this court would have any right to lay down the terms of the use of the property, the duration of same, the notice to be given, the upkeep, compensation for depreciation or injury from time to time, or condition of the property at the time when it is returned to the owners. In my opinion the government can exercise its power of eminent domain and take it on such terms and in such manner as it wishes and the court can not curb that. But the court can, and it is its duty, to see that the owner receives just compensation and so far as is possible made whole for what has been taken away from him. A case recently decided in the District Court of Delaware (United States v. 16.747 acres of land, D. C., 50 F.Supp. 389, decided June 15, 1943), has been cited by the government where it was held that the interest acquired by the government was a year to year leasehold. In that case the court was asked to vacate the order granting possession and the judgment of taking of the property, the purpose of the motion being to contest the legal sufficiency of the petition for condemnation and the proceedings taken thereunder. Ap-

parently the real reason of this motion was that the interest sought to be taken in the property and the conditions attending same were so uncertain and vague that there was no way of measuring what would be just compensation. The court held that a fair annual rental might be ascertained and that if any damage occurred to the property it would be highly speculative to attempt to ascertain the value of same and that the defendants might have their remedy for such damages, if such occurred, at the end of the period of occupancy. The court apparently bases its decision in great part upon a number of cases from the Court of Claims, which it cites. In that case the owners do not seem to have raised the same issues as here, or ask that the entire compensation be fixed at the time of trial. It does not appear whether any such issues were considered. Whether or not they were, I do not find it possible to agree that a condemnation case is to be brought, tried piece meal, and kept open for an indefinite term to meet conditions which may hereafter arise. If that theory be adopted this case might be kept open and run from year to year. No man knows how long the present world conflicts will run. No man knows what other conflicts will be entered into before the end of these. Certainly already great emergencies have arisen and emergencies for housing, manufacturing and other war and allied interests may be with us for many years, perhaps generations. What right has this court to fix an annual rental at this time; and adjudge whether the owners be justly compensated, over compensated, or under compensated, twenty five, fifty or a hundred years hence? And during this period would the parties have a right to come in and apply to the court for a modification of the judgment or another trial to fix what would then be a fair rental? And at the end of this period would this court have any power to determine the amount of injury, damages or depreciation that had been caused by the use of the property? If the property had been misused and damaged to such an extent that it has little, if any, remaining value, might not that be held to be a tortious act by the government and not compensatory in these proceedings? I can not believe that the constitutional guarantee that no man's property should be taken without just compensation has any such meaning and that the owners of the property may be forced into receiving annual stipends. Just compensation in my opinion means exactly

what it says, and it means that the owner himself is entitled to receive his compensation; not that his estate or his children or his grandchildren are to receive installment payments and perhaps inherit a law suit in the far future.

7. It has been pointed out that in the pleadings there are recitals that indicate that the property is taken for housing purposes and that it is suggested that, therefore, irreparable damages to the property such as excavations or placing of such structures as could hardly be removed without enormous expense, or some other use of the land which may utterly destroy it for normal general uses and purposes will not occur. It is true that such a showing is made as to its present use. However, in answer to that, it is submitted that the fact that it is to be used for housing does not mean that it will not be injured, and as a matter of fact, it has been stated in argument that the government has already constructed on the property a large number of houses which are said to be laid out for specific purposes applicable to war time housing, built upon concrete foundations and the buildings have a semi-permanent character. Discussion was had as to the effect of these buildings on the property and the owners take the position that while the buildings may be useful for emergency war housing, they could not possibly be used or usable in the development of a residential subdivision for which this property was laid out and intended. Nor would the placing of concrete foundations and of the water, sewer and other pipe lines and utility connections be of use or benefit unless the same design and layout of the property is to be adhered to. There is no way of knowing whether at the end of the emergency and the surrender of the property (if such time ever comes), that the government will remove the houses, including the foundations, or take away only the superstructures or perhaps salvage such portions as are of value, such as plumbing, piping, metal work, or such other materials as it wants. All of this is veriest guess work and speculation. It is assumed that when the case comes to be tried before a jury, the jury will view the site. Of course it will be told to consider the land as it was at the date of taking and that the buildings placed on the land are not to be taken into consideration as affecting the value. However, it must be assumed that the jurors are men of common sense and that they will have the actual knowledge of what use has been made of the land and whether or not it has been improved or ruined as a proposed residential development.

8. The point is made on behalf of the defendants that the effect of the proceedings in this cause is an attempt to force the owners into a rental contract, and, therefore, they suggest that the court should either not entertain the cause at all because the government is without power to force an owner into such a position, or that the court construe the Declaration and Petition to be a taking in fee simple. I do not think that either of these positions is mandatory. I know of no power in the government to force one to enter into a lease or contract relating to his property, but on the other hand, I think that the government has ample power to force the owner to surrender his property and that it may name what interest it desires to take and all the terms and conditions surrounding it. But when the government has done that it has taken the property and the owner has his remedy under his constitutional guarantee to receive just compensation to be fixed by a court and jury. It may be that the jury will consider that the taking is equivalent to a fee simple taking or it may consider it very much less. But all these are questions of fact for the determination of the jury and should be submitted to it in the light of and with a view to all the surrounding circumstances affecting the particular property taken and sought to be valued in the instant case. Each case will of course stand upon its own footing as to the items and influences entering into finding a true value considering the location of the property, its condition, its surroundings, its usefulness and useability, the time during which it is to be occupied, how it is to be used, and what is to happen to it during the occupancy, when it is to be returned, and what is to be its condition when so returned.

9. Referring to the matter of taxes, under the law of South Carolina the owner of the fee is responsible for same. The government did not choose to take a complete fee simple title and, therefore, the fee remains as at present in the names of the defendant owners. The taxes will be assessed against them and will constitute a lien on their interests in the property. As to whether or not they will pay these taxes is a question for them to decide. I am of

the opinion that I have no power to order the government to pay the taxes and whether or not it should decide to do so is a matter of favor, not of right. However, all taxes which are past due and already constitute a lien on these properties should be taken care of from the awards which may be made to the owners.

As to assessments which have been made for street, drainage or other improvements, these are direct liens upon the properties since the theory of such assessments is that they are justified because of the benefit accruing to the property by reason of the improvements. This is generally true throughout the United States and includes South Carolina. See Beatty v. Wittekamp, 171 S.C. 326, 172 S.E. 122; Wesley M. E. Church v. City of Columbia, 105 S. C. 303, 89 S.E. 641; Jackson v. Breeland, 103 S.C. 184, 88 S.E. 128, and also Illinois Central Railroad Co. v. Decatur, 147 U.S. 190, 13 S.Ct. 293, 37 L.Ed. 132. Therefore, any funds now or hereafter awarded to the owners as just compensation shall be subject. to deduction for payment of all outstanding and unpaid improvement assessments against these properties. These questions, however, will not be matters to be passed upon by the jury, but the jury will be required to fix just compensation, having in mind that the properties have been improved by the above referred to improvements. After a verdict has been rendered then by appropriate order the court will find what amount of assessments for improvements and what amount of taxes are due and will direct them paid from the amount of the judgment against the United States.

### Summary.

The matter hereinbefore considered is in great part one of novel impression and no really pertinent cases have been cited to me, nor has my independent search disclosed such. We are, therefore, traveling an unchartered course and the matter must be decided by what I conceive to be the sound dictates of reason and fairness. After all, the intent of the Fifth Amendment to the Constitution is that while the government has power, with practically no limitation, to take property, nevertheless, the owner is to be treated fairly and his rights maintained. It is the duty of a court to attempt as nearly as possible to put the owner in as good a place as he was before the taking. In my opinion he is entitled to receive a definite fixed payment representing the value of his property at the time of the taking. If this taking be of a fee simple title the rules under which to ascertain the compensation are well fixed and known. See particularly United States v. Miller, supra. On the other hand, if the estate is anything less, then it is a question of fact for the jury to give due consideration to what, if anything, is left to the land owner, and when it has found a value of that it should be deducted from the full value of a fee simple title. This to me more nearly approaches a definition of just compensation and fair dealing with an owner than any other suggestions that have been made.

It may be suggested that the government should not be put to the jeopardy and risk of a finding which might be in part speculative because of the uncertainty of all the conditions surrounding the taking of the property. The same argument applies with equal force to the owner. And since it is the government which has determined to take the property and has determined the estate in and manner of taking, if either party is to run the risk of a loss because of changes in the future, it would seem to be just that this be assumed by the party who is in control of and has determined the status of the case.

Accordingly, I shall direct that the cause be placed upon the calendar for trial before a jury, which will be instructed to consider the matter in the light of the foregoing observations; and the plaintiff and defendants may introduce such testimony as they desire within the scope above outlined. The jury will be given an opportunity to view the property and after hearing all pertinent testimony the matter will be submitted to it with instructions along the lines as hereinabove set forth.

There is one other remaining question that has not been passed upon. The defendants point out that the county and municipal authorities are threatening to enforce liens for taxes and assessments and raise the question as to whether the deposits made in this court should be applied to the liquidation of same. Since I hold that the taxes and assessments are liens against the respective parcels, I am of the opinion that such deposits may be applied for such purposes and if it appears that the taxing authorities are preparing to enforce these liens, the parties in this cause may present

appropriate orders for the purpose of applying such amounts as are on deposit towards the satisfaction of same.