UNITED STATES v. 60,000 SQUARE FEET OF LAND AND EIGHT-STORY HOTEL THEREON, KNOWN AS OAKLAND HOTEL, et al.

No. 22491–G.

District Court, N. D. California, S. D.

Dec. 30, 1943.

M. Mitchell Bourquin, Sp. Asst. to Atty. Gen., and John E. Lynch, Sp. Atty., for plaintiff.

Fitzgerald, Abbott & Beardsley, of Oakland, Cal., for defendant Hotel Oakland Corporation.

GOODMAN, District Judge.

On February 20, 1943, plaintiff, pursuant to 26 Stat. 316, 40 Stat. 241, 40 Stat. 518, Pub.Law 507, 77th Congress, 56 Stat. 177, 50 U.S.C.A. § 171, 50 U.S.C.A.Appendix, § 632, and Act July 2, 1942, Public Law 649, 77th Congress, 56 Stat. 611, filed this action to condemn the eight story Class A building known as Oakland Hotel, occupying a city block in the City of Oakland, Northern District of California. On the same day the court made and entered its order granting plaintiff immediate possession of the hotel property with the right "to proceed thereon with the authorized public works of the United States." On August 5, 1943, the Secretary of War, pursuant to the Statutes cited supra and 46 Stat. 1421, 40 U.S.C.A. § 258a et seq., filed herein his declaration [of taking] that the public uses for the taking were: "to provide for a military hospital and other military purposes incident thereto," and that the estate taken was for "a term for years ending June 30, 1943 together with the right to extend said term for additional yearly periods thereafter during the existing national emergency, at the election of the Secretary of War, which election shall be signified by the giving of notice at any time prior to the expiration of the term hereby taken or subsequent extensions thereof, * * *."

On August 16, 1943, an amendment to the complaint, by permission of court, was filed, whereby, the plaintiff alleged that it took, in addition to the real property, "the

exclusive use of the personal property, equipment and furnishings located on said property, as more particularly described in Exhibit I." (Exhibit I consists of 116 pages listing the various furnishings of the Hotel.)

On September 13, 1943, Hotel Oakland Corporation answered, alleging specially: (1) that the leasehold interest taken included "the right of plaintiff to make any and all alterations * * * that in the uncontrolled judgment of the plaintiff may be necessary or proper, which right to make said alterations is without any limitation or restriction or condition whatever" and further that since taking possession plaintiff has substantially altered the premises and refuses in any way to limit the right or power to further alter; (2) that the personal property described was taken and not its *use*.

The pre-trial issues which the parties request the court to determine are:

1. Is the right to alter the premises to be evaluated and compensation therefor awarded?

2. Is compensation for the personal property to be fixed on the basis of the value thereof or on the basis of the value of the use thereof during the term of the lease?

The issues submitted to the court may not, strictly speaking, be determined under the authority of Rule 16 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, inasmuch as the Rules of Civil Procedure are not applicable to condemnation proceedings. Rule 81(a) (7), R.C.P. However, for the laudable purpose of simplifying the issues of fact to be submitted to the jury upon trial, both sides have agreed that the court may now, in advance of trial, decide the questions propounded.

In determining the pre-trial issues, we are not concerned with the defendants Bank of America National Trust and Savings Association and City of Oakland, inasmuch as the Bank disclaimed and City of Oakland claims only a tax lien and a public street easement.

### Evaluation of Right to Alter Premises.

Defendant, Hotel Oakland Corporation, contends that from the complaint and declaration of taking, it appears that plaintiff has taken the right to alter the premises and further that *in fact* plaintiff has already substantially altered the hotel building to make it suitable for a military hospital. While ostensibly plaintiff controverts this contention, in fact its denial has no weight because the alterations already made lend undeniable support to the defendant's claim that plaintiff intended, by its complaint and declaration, to *take* the right to alter the premises. Defendant further maintains that this so-called right or power to alter the premises, already exercised, must be taken into account in determining value of the use of the premises and that compensation therefor must be presently awarded in such sum as may be fixed by the jury. In reply, plaintiff asserts that it, being so obligated by law, will on completion of the term of the lease restore the premises to their original condition, wear and tear excepted, and further that if it fails so to do, defendant may then pursue it in the Court of Claims for damages. What the defendant Hotel Oakland Corporation is really seeking is: (1) rental value on a yearly basis for its hotel property plus (2) a sum representing the reasonable value of the type or kind of interest in its property which the government is taking. Defendant chooses to call the latter, compensation for *the right to alter the premises*.

In fact, however, the interest taken, denominated a leasehold by the government, is in reality an interest for a term but less than the fee.

If the interest, here taken by the United States, were the subject of contract between private citizens, the consideration for the right to alter and change the purpose of the structure would undoubtedly be in the form either of a cash payment or additional rental. Assume that a private corporation were desirous of leasing the Oakland Hotel for a term of years with the right to remodel and alter and use e. g. for a hospital or a warehouse. Unquestionably Oakland Hotel would require, for granting such a lease, either a cash consideration in addition to rental, or additional payments of rental. It would have in mind that conversion of the hotel into a hospital or warehouse might substantially affect the value of the property.

By paramount public right, here, plaintiff seizes the Oakland Hotel and takes the particular interest therein which suits its purpose. This it may do. But in so doing, it must pay just compensation there-

for. It must pay what is just for the special type or character of interest which it sees fit to acquire.

■ It is well settled that the government may acquire for public purposes such property as it may select; it may take such interest in or use of property as it may determine; it may fix the term of use; it may use the property for any purpose. These powers are executive. Monongahela Navigation Co. v. United States, 148 U.S. 312, 13 S.Ct. 622, 37 L.Ed. 463; United States v. New River Collieries Co., 262 U.S. 341, 43 S.Ct. 565, 67 L.Ed. 1014; United States v. Meyer, 7 Cir., 113 F.2d 387.

■ The extent and exercise of such powers is not of judicial concern. But what compensation shall be awarded and the rules and standards applicable thereto is solely a judicial function. Monongahela Navigation Co. v. United States, supra [148 U.S. 312, 13 S.Ct. 633, 37 L.Ed. 463]. It is not only the province but the duty of the court to see to it "that private property shall not be taken for public uses without just compensation." (Const. Amend. 5.)

Never before in the history of the nation has it been necessary for the government to acquire so many and so varied properties and for such a multiplicity of purposes. The global warfare in which we are engaged has required the taking of innumerable kinds of civilian property for conversion into structures of a military character. Buildings and structures wholly unsuitable for war purposes have been seized and converted almost overnight by military or naval authority. This has created problems of evaluation for which precedents are rare or nonexistent.

The question presented here is novel. Counsel have cited no really pertinent authority, nor have we found any available at the moment. Three recent District Court cases have been cited: United States v. 16.747 Acres of Land, D.C., 50 F.Supp. 389; United States v. 5.741 Acres of Land, D.C., 51 F.Supp. 147; United States v. 9.94 Acres, D.C., 51 F.Supp. 478. All these cases, however, involved leases of unimproved land and the issues concerned possible damage to land after the removal of structures erected thereon by the government. The reasoning of the court in the latest of the cases, United States v. 9.94 Acres, supra, I have found most helpful in determining the question in this case.

Congress has provided for compensation for property taken in eminent domain in conformity with state law and procedure. 50 U.S.C.A. § 171; 50 U.S.C.A.Appendix, § 632; 40 U.S.C.A. § 258. The California Constitution provides for: "immediate payment of just compensation for such taking and any damage incident thereto." California Constitution, Art. I, sec. 14.

It is clear to me, that it was intended by the Fifth Amendment, and the pertinent statutes enacted to effectuate it, that "just compensation" does not mean compensation awarded *sometime* or *somewhere*. The government, of course, could have taken the full fee to the property, in which event the · factual question of evaluation could be settled according to well-established rules. United States v. Miller, 317 U.S. 369, 63 S.Ct. 276. It elected however to take a leasehold term for a military hospital for an indeterminate period.

"In my opinion the government can exercise its power of eminent domain and take it on such terms and in such manner as it wishes and the court can not curb that. But the court can, and it is its duty, to see that the owner receives just compensation and so far as is possible made whole for what has been taken away from him." United States v. 9.94 Acres, D.C., 51 F.Supp. 478, at page 483 (opinion of Judge Waring.)

■ It is contended that no present detriment warrants present assessment of damages, inasmuch as the government is obligated to eventually return the property, subject to wear and tear, in its condition at the time of taking.

But by taking this special or particular type or interest in defendant's hotel property, the government cannot defer payment for the damage, or interest taken, to a later period. Nor can it force defendant, if it chooses, to again litigate its right to compensation in another forum.

■ Compensation should be determined by the jury in this proceeding. It has been frequently held that the compensation for the taking of property must be awarded in the condemnation proceeding itself. In East Bay Municipal Utility District v. Lodi, 120 Cal.App. 740, at page 762, 8 P.2d 532, at page 541, the court said: "The law seems to be quite uniform that in eminent domain proceedings the damages must be assessed once and for all, and must include

all the damages that might be inflicted by the condemning party." Id. Sternes v. Sutter Butte Canal Co., 61 Cal.App. 737, 216 P. 66.

■ The government says it is obligated to and will return the hotel to the defendant in the same condition as received, wear and tear excepted, when it finally determines to end the lease. But "just compensation" does not mean a promise, howsoever well intentioned, to perform an act in the future. The owners of the hotel are entitled to compensation for the taking, not their heirs in years to come, and then mayhap, after litigation in the Court of Claims, if there be one at the time. What would really happen if this theory were adopted, would be, as stated by Judge Waring in United States v. 9.94 Acres, supra, that condemnation cases would be tried piecemeal—a part of the compensation awarded now and a part years hence and then maybe only after new litigation.

■ It is claimed by plaintiff that evaluation of the damage or loss suffered by defendant due to the use to which the property is being put, and for which it was taken, is too speculative. The government, however, has determined the nature of the estate or interest taken and it likewise will determine the length of tenure. Therefore it is just that, if there be any uncertainty arising as to the amount of compensation, it cannot be advantaged by the plaintiff. Furthermore, mere difficulty in assessing damages, where the right to compensation is present, cannot be urged as a ground for denying compensation. "Damages are not rendered uncertain because they cannot be calculated with absolute exactness. It is sufficient if a reasonable basis of computation is afforded, although the result be only approximate." Eastman Kodak Co. v. Southern Photo Co., 273 U. S. 359, 379, 47 S.Ct. 400, 405, 71 L.Ed. 684. See also Palmer v. Connecticut Ry. Co., 311 U.S. 544, 560, 61 S.Ct. 379, 85 L.Ed. 336. It may well be that defendant will fare better to await a later day for the determination of its damage. Be that as it may, defendant demands that its compensation be fixed in this proceeding and I hold that it is so entitled.

In my opinion, defendant is entitled to receive, besides an annual rental, a fixed amount representing the difference between the value of the whole fee and the value of the property as of the date of its return by the government. Proper evidence, bearing on this subject, can be presented to the jury. A statement of the changes already made in the hotel structure certainly can be agreed upon by the parties. Failing this, evidence may be presented to the court on the subject and a finding made thereon, prior to trial. Also it is pertinent to remark that the jury may be permitted to view the property. Furthermore, those expert in and familiar with the value of the use of the property may be heard.

Compensation for the Personal Property.

■ Furnishings of the hotel were taken by plaintiff. It prays that it pay only the reasonable value of the use thereof. There is no authority in the statute therefor. The Second War Powers Act, 1942, 50 U.S.C.A.Appendix, § 632, authorizes the Secretary of War to acquire by condemnation "any real property, temporary use thereof, or other interest therein, together with any personal property located thereon or used therewith, that shall be deemed necessary for military * * * purposes." It (the statute) does not authorize the acquisition of the *use* of personal property. There is no ambiguity in the language of the statute. Such being the case, there is no necessity of resorting to Congressional debates to resolve the meaning of the Act. 25 R.C.L., Statutes, § 213, pp. 957, 958; 25 R.C.L., Statutes, § 270, pp. 1037, 1038. Plaintiff refers to Congressional debates on the subject, but even if they are appropriate they are not helpful, because the claimed uncertainty is not cleared up in the Congressional discussion on the subject. All that was brought out in the Congressional discussion was that the government was not to have the power to take personal property generally but only when personal property was upon or used in connection with real property condemned. It is not inappropriate to comment that Congress certainly did not intend to authorize the Secretary of War to take the temporary use of pillows, mattresses, sofas and other similar hotel furnishings, when obviously the very use thereof would destroy their value.

Defendant may prepare a pre-trial order fixing the issues to be presented to the jury in accordance with the views herein expressed. Defendant, having the burden, will open and close both the evidence and

argument. The court will reserve the right to make such further orders at the trial as the interests of justice may require.