**UNITED STATES v. 14.4756 ACRES OF LAND IN CHRISTIANA HUNDRED, NEW CASTLE COUNTY, et al.**

Civ. A. No. 294.

District Court, D. Delaware.

June 5, 1947.

W. Thomas Knowles, Asst. U. S. Atty., of Wilmington, Del., for petitioner.

H. Albert Young and P. Warren Green, both of Wilmington, Del., for defendants.

RODNEY, District Judge.

This matter concerns a condemnation of the use of a small tract of farm land near the City of Wilmington. As to many features it is similar to United States v. 16.747 Acres of Land, D. C., 50 F.Supp. 389, determined in this district.

Under appropriate proceedings and on February 26, 1943 at the request of the Acting Commissioner of the National Housing Agency, the present proceedings were instituted. The ground taken by the government consisted of 14.4756 acres of farm land near a plant engaged in war work, which land so taken was part of a larger tract used as a farm and residence. The purpose of the taking was "in connection with the construction of a defense housing project for the housing of defense workers, and [the petition stated] that the said acquisition is necessary and advantageous to the interests of the United States for the successful prosecution of the war." No absolute and entire interest in the land was taken, but only the exclusive use "for one year with the right in the United States to renew the said use from year to year for the duration of the war emergency as determined by the President of the United States and three years thereafter, and with the right of the United States to remove all improvements constructed or placed upon said land by the United States at the termination of said use, subject to certain easements and rights. * * *"

In United States v. 16.747 Acres, supra, it was shown that the interest acquired by the government was a use of the property from year to year during the emergency and for three years thereafter and was analogous to a tenancy from year to year between private parties. The difference between the two situations is that the inception of the relationship between private parties arises from contract, and in the present case it arises from statutory provisions and grows out of the national emergency and safety.

The government has taken the land and, pursuant to the Statute, deposited the sum of $257.40, being the estimated rental, for each of the years since the original taking.

In reasonable conformity with state practice and pursuant to the rules of this court, commissioners have been appointed to view the land and determine the annual rental value thereof as of the time of the original taking by the government and to continue while the government retains possession.

A hearing in the nature of a pretrial conference was had to consider the simplification of the issues and to determine the elements or factors to be considered by the commissioners as constituting just compensation for the occupancy of the lands under the facts of this case.

The defendants have filed a list of 15 items which they contend should be considered by the commissioners. Because this list of items can be divided into distinctive groups, the numerical order has been changed by me. The list of items of the defendants is as follows:

1. Damage to the paving of the private lane (1733.9 feet in length) which after the taking of the lands has been used by numerous occupants on said lands and by many occupants on the lands adjoining whereby said paving is now in complete disrepair and almost destroyed.

2. Destruction of the trees which bordered said private lane leading to the home of the defendants, and of all such trees as were removed elsewhere from the land acquired by the petitioner.

3. The altering and changing of the contours of the lands acquired by the petitioner, including the terracing of the lands into four levels, the hauling away and relocating of quantities of earth, the removal of topsoil, the installation of concrete curbing, walks, roads, surface water intakes, fire hydrants, poles and other operations which

completely changed the topography, contour and landscape of said lands.

4. Compensation should be made for the water well which prior to the taking was the only source of supply to the owners and which after the taking was caused to become dry due to the depth and extent of the excavations made on said land.

5. Cost of hook-up under temporary permit to city water main in order to secure adequate water supply.

6. Cost of water rent resulting from the taking of the land and the cutting off of the owner's water supply.

7. Cost for installing a pipe line from the property of the owners along the private lane on through Maryland Avenue for hook-up and connection to the city water main after the government abandons the project and removes all utilities.

8. Increase in county taxes as a result of the increased assessment due to the government's project on the land taken from the defendants, the owners.

12. Compensation should be made to the owners for the creation of an easement granted to the City of Wilmington for a twenty-four inch sewer main.

13. The despoilation of the land taken by the government from the owners as farm land.

14. Compensation should be made for the cost for the replacement, grading and removal of underground utilities so as to put the land back in the condition it was in before the land was taken.

15. Damages for all fences and other property on the land destroyed by the petitioner in acquiring same.

■ None of the above items should now be considered by the commissioners in fixing the annual rental value of a small tract of farm land taken by the government under a taking analogous to a tenancy from year to year, between private owners, and with the right of the lessee to renew the lease. In the case of private owners the lessor, in arriving at the amount of rental to be charged, would consider only those elements or factors connected with the lease itself, considering the financial return and other benefits from the lease and also the detriment to the lessor from the granting of the lease, as such. In a taking of a use of land by the government and upon an annual basis, the elements or factors governing the fair market value of the use would be largely the same as if the arrangement had been between private parties. As the consideration of the lease itself, if between private parties, would normally be ascertained at the time possession of the land would pass to the lessee, so in a taking by the government the annual rent to be paid would be ascertained as of the time of taking of the use of the land in 1943. The amount of annual rental, therefore, would not be affected by the happenings since that time.

■ In case the lease between private parties contemplated changes to be made in the tract by a lessee, a careful lessor might provide by bond or otherwise for the restoration of the property to its former condition at the expiration of the tenancy or for damages upon failure to make such restoration. In a taking by the government for the disclosed purpose of erecting houses for war workers and with the right to remove the improvements upon the termination of the lease, there is implicit the understanding that the government will restore the property to its former condition or make compensation for such damages as may be sustained. In place of the bond as between private parties, which would require legal ascertainment of damages, there is substituted the liability of the government for such damages as may be shown to have been sustained.

■■ The defendants contend that compensation to which they are now entitled should include those damages to which they may be entitled by reason of the failure of the government, at the termination of its occupancy, to restore the property to its former condition. They contend that the present owners are entitled to the compensation, "not their heirs in years to come and then after litigation in a court of claims." For this they cite United States v. 60,000 Square Feet of Land, etc., D.C. Cal., 53 F.Supp. 767, which does so hold. The fundamental error of this reasoning lies in this. The present owners are, of course, entitled to full and fair compensation for the taking of the use of the prop-

erty. Damages for any failure to restore the property to its former condition is a separate element and must be, at this time, speculative. The ascertainment of those damages at this time would be unfair to every interest. It would be unfair to the government because such damages would be considered as a factor in an annual rental instead of in gross, and such damages may never arise because the government may fully restore the property. Ascertainment of such damages now would be unfair to the present owners because upon the termination of the use and upon failure of the government to observe its obligations the damages may, owing to future action, greatly exceed their present amount. The present ascertainment of such damages would be unfair to any owner of the property at the time of the surrender of the use. At that time and upon the failure of the government to observe its obligations, the then owner, if it be heir or alienee, would take the property "cum onere" with damage sustained but with compensation theretofore paid to one who did not suffer thereby.

 Items 4, 5 and 6 of the list of items of the defendants may need specific comment. It is assumed that the water well mentioned in Item 4 did not exist on the land taken by the government, but on the remaining land of the owners not covered by the taking. If the well had existed on the land taken, then substitution of a new water supply might well have entered into the consideration of the lease. As the well existed on land not taken, any subsequent damage to it would not enter into the prior fixation of the amount of rental but the damage, subsequently accruing, would enter into the liability of the government for damages accruing subsequent to the taking. In the same category would fall Items 5 and 6 unless, indeed, No. 6 should fall in the same class as Item 8 now to be considered.

 The only remaining doubtful item among the foregoing list is Item 8 concerning an increase of county taxes as a result of increased assessment due to the taking of the land by the government. If the claim of increased assessment has application to the 15 acres of land, the use of

which was taken by the government, then it is agreed that the assessments against the buildings have been made against the governmental agency erecting the buildings and that such agency, pursuant to the Lanham Act, 42 U.S.C.A. § 1521 et seq., 1546, and in lieu of taxes has continued to pay an amount equivalent to the amount which would have been due as taxes by reason of the erection of the buildings. This same situation arose in Munhall Borough v. United States, 3 Cir., 159 F.2d 603, where, under somewhat similar circumstances, the question of taxes was not considered in arriving at an annual rental value. Insofar as Item 8 may apply to increased assessments on land not taken by the government, but which increase was due to the taking itself, then this increase clearly arose after the time when the amount of the annual rent must be ascertained, viz., when the use of the land was taken by the government. Any increase of taxes, as here contemplated, might not be deferrable until the government gives up the use of the property for, conceivably, it might constitute a large amount of out of pocket annual expense by the owner not related to the future duty of the government to restore the property. It may be that the owners have a separate and distinct claim for these taxes, if they exist, which may now be recovered in a separate proceeding. I expressly make no conclusion as to this. All I do say is that these additional taxes, if they exist for the years following 1943, are not to be considered in arriving at the annual rental value of the use of the property as of February 26, 1943.

 This then leaves the following items:

9. Severance damage to the remaining portion of the land occupied by the defendants.

10. The conversion of what was formerly a private lane into a public road.

11. The invasion of the privacy of the defendants in the use and enjoyment of their home.

These items may all be considered by the commissioners in arriving at a fair rental value of the property taken. When from a farm of undisclosed size there is taken a tract of almost fifteen acres, it is

quite conceivable that there must be such readjustment of the remainder for ordinary tillage and rotation of crops as to cause such taking a material element in rental value. To some degree the commissioners may also give consideration to the involuntary and changed status of the owners with reference to the enjoyment of their home and approach thereto, with specific reference to the enforced proximity of strangers and the indiscriminate use of a private lane. If these matters could have a bearing upon the rental value if the lease had been a voluntary one, then they would not cease to have materiality if the taking was involuntary so far as the owners were concerned.

█ This court has been urged, after the compensation of annual rental has been ascertained, to retain jurisdiction of the subject matter for the subsequent ascertainment of damages growing out of the taking and the failure to surrender the property in its former condition. For this may be cited United States v. 9.94 Acres of Land, D.C.S.C., 51 F.Supp. 478; United States v. 60,000 Square Feet of Land, D.C. Cal., 53 F.Supp. 767; United States v. Certain Parcels of Land, etc., D.C.Md., 55 F.Supp. 257.

With merited respect for the logic of those conclusions, it is difficult to see how such method could be accomplished no matter how desirable such a course may seem to be. The jurisdiction of this court in the present matter is solely confined to the condemnation proceedings. Any possible future damages are now speculative. They may not exist when the property is returned or the damages may be greatly increased above their present amount. The possible future damages will not flow from the annual lease or right of use of the property but from the failure to return the property in proper condition. No known method of procedure, of pleadings or process, would seem to be available to give this court jurisdiction of proceedings against the government which might even exceed the limited amount under the Tucker Act, 28 U.S.C.A. § 41(20), and it is difficult to see how any future finding of damages against the government in this proceeding could be enforced.

In United States v. 16.747 Acres, D.C., 50 F.Supp. 389, 391, and in this district it was held, "It is to be assumed that, once its use has ceased, the government will return the property in substantially the same condition that it was at the time of the taking. If, however, injury does occur during or at the end of the occupancy, when both the fact of injury and the amount are ascertainable, defendants have a remedy by original action against the government."

To the same effect is United States v. 5.741 Acres of Land, etc., D.C.N.Y., 51 F.Supp. 147; United States v. Improved Premises, etc., D.C.S.D.N.Y., 54 F.Supp. 469, 471.