## In re CONDEMNATION OF LANDS FOR MILITARY CAMP.

(District Court, E. D. Arkansas, W. D. April 18, 1918.)

1. EMINENT DOMAIN ☞143—CONDEMNATION—COMPENSATION.
    Where, under Act July 2, 1917, c. 35, 40 Stat. 241, land is condemned for temporary use for the location and construction of a military camp, the owners are entitled to the rental value of their property, if it is tillable or occupied, and to compensation for improvements which will necessarily be destroyed, either in whole or in part, and in such case the rental value will be based on the value of the land, without such improvements.

2. EMINENT DOMAIN ☞143—CONDEMNATION—COMPENSATION.
    Where the land is wild and not subject to cultivation, the rental for the temporary use should be the prevailing rate of interest on its fair value.

3. EMINENT DOMAIN ☞241—CONDEMNATION—COMPENSATION—JUDGMENT.
    Where land is condemned under Act July 2, 1917, for temporary use as a military reservation, the judgment should provide that the government, in addition to paying the fair rental value of the land and for improvements necessarily destroyed, should obligate itself either to return the land in as good condition as when taken, or to make compensation in the future for injuries resulting from its use for military purposes, and for the purpose of fixing such future damages the court will retain jurisdiction of the case.

At Law. In the matter of condemnation of lands by the government for temporary use for military purposes. Instructions for guidance of jury stated.

W. H. Martin, U. S. Atty., of Hot Springs, Ark., and Ashley Cockrill, Sp. Asst. U. S. Atty., of Little Rock, Ark., for the United States. Mehaffey, Reid & Mehaffey, House & House, and R. L. Rogers, all of Little Rock, Ark., for landowners.

TRIEBER, District Judge. The government has instituted a number of proceedings for the acquirement by condemnation for temporary use of a number of tracts of land needed for the location and construction of a military training camp, under the provisions of Act July 2, 1917, c. 35, 40 Stat. 241 (section 6911a, U. S. Comp. St. Temporary Supplement 1917). If the land in controversy were to be used for ordinary purposes, which would not require or result in the destruction, either wholly or in part, of the improvements on the lands, or changing them to an extent which would make them unfit, after the occupancy of the land by the government ceases, for the purpose for which they are almost exclusively suitable, agriculture, the value of such occupancy could easily be determined by a jury; but the uses here contemplated are for military purposes, for artillery and rifle ranges, for maneuvering by and training of the thousands of soldiers, now located at the cantonment adjoining these lands, and any uses deemed necessary for military purposes.

What destruction of improvements or changes of the lands from their present condition may be necessary is at present uncertain. That many of the houses, barns, fences, and other improvements will have

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

to be totally, and others partially, destroyed, is conceded. That some of the lands will have to be used for trenches, and others for roads and foundations for heavy artillery, is also conceded; but on which of these tracts, which are owned by a large number of persons, many of them in 10, 20, and 40 acre tracts, these destructions or changes will have to be made, is at present uncertain, except as to a few small tracts. It is therefore incumbent on the court to formulate some rules for the guidance of juries in determining the damages to be assessed in the various cases to be tried; rules which will do justice to the owners of the lands and at the same time protect the government against damages in excess of those in fact sustained by the owners of the land. The conclusions I have reached, and which will be applied in these cases, are:

[1] The owner is entitled to the rental value of his property, if it is tillable or occupied. If it appears from evidence at the trial that the improvements on a tract of land will necessarily have to be destroyed, either wholly or in part, the owner is entitled to compensation for their value, and in such cases the rental value will be for the land, without these improvements. By improvements I refer to houses, fences, barns, and other buildings.

[2] If the land is wild, and not subject to cultivation, the rental should be the prevailing rate of interest on its fair value.

[3] In addition to these payments, the government must obligate itself, and the judgment will so provide, that, when it surrenders the land to the owner, it will be returned to him in as good a condition as when it took possession, the natural wear and tear excepted. If the owners have been compensated in the action for the improvements, then, of course, it will not be required to replace them, or pay again for them. If the improvements, for which there has not been compensation, are not replaced, or the lands are not returned in as good condition as when the government took possession of them, natural wear and tear excepted, it is to pay such sums as damages as will enable the owner to put the land back in the condition it was, when the government took possession. This is necessary, as the government may cut trenches, build macadam roads, and otherwise make use of the land, which will, if not entirely, at least to some extent, destroy its value as farming land, for which these lands are only suitable.

If the parties cannot agree upon the damages to be paid, if the government fails to put the land back in the condition it was, when it entered upon it, the court will, upon the application of either party, have a jury assess the damages, and for that purpose the court will retain jurisdiction of this cause. This, in the opinion of the court, is equitable and just to all parties, will protect the landowner, and will enable the government to make use of the land for military training, so necessary in this great emergency.