### UNITED STATES v. 266.33 ACRES OF LAND, MORE OR LESS, IN ISLAND COUNTY, WASH., et al.

#### No. 2652.

United States District Court
W. D. Washington, N. D.

April 3, 1951.

J. Charles Dennis, U. S. Atty., Seattle, Wash., Aleen Hogshire, Sp. Asst. Atty. Gen., Lands Division, for plaintiff.

Cattlett, Hartman, Jarvis & Williams, Seattle, Wash., for defendant.

HALL, District Judge.

In this condemnation suit the Government seeks the fee title to three parcels of property on Whidbey Island for a bombing target. It was filed on November 7, 1950, upon a declaration of taking. The parcels are designated as Parcels 2, 4 and 5.

The Government has brought on for hearing a motion which is called a "Motion for an Order Determining Values," which in reality is a motion for an order to determine the method of determining values, or more properly, for an order determining the elements which the jury on trial may take into consideration in determining values.

Without reciting the details of the various proceedings heretofore had between the parties, it is sufficient to say that all three parcels were taken possession of on July 1, 1944; that the Government continued in possession of Parcel 2 until the filing of the within Action No. 2652 on November 7, 1950, under negotiated lease or leases; that the Government continued in possession of Parcels 4 and 5 under negotiated leases until June 30, 1948, and had on June 8, 1948, filed condemnation Case No. 2001 in this Court to condemn an additional year's estate, that is, from July 1, 1948, until June 30, 1949, as to said

Parcels 4 and 5; that an agreement was reached as to that year's rental value and judgment was entered and paid for that amount, but the case has remained open and further jurisdiction was reserved therein; that on June 30, 1949, the Government surrendered possession of Parcels 4 and 5 to the owners who retained that possession until the filing of this action No. 2652, on November 7, 1950, when the Government again went into possession, as stated, under declaration of taking for the fee title thereto. In the meanwhile the owners of Parcels 4 and 5 had in September, 1949, filed a suit in the Court of Claims for restoration damages to said parcels, i. e., a sum of money it was alleged to be required to restore Parcels 4 and 5 to the condition they were in when the Government originally took possession of them on July 1, 1944. This suit for the period covered by negotiated leases was based on the requirement in each of the various leases executed between the parties that the Government, if required by the lessor, would upon notice before the expiration of the lease or renewal thereof restore the premises to the same condition as that existing at the time of entering the property under the leases, ordinary wear and tear by the elements thereby excepted.

It appears to be conceded that the demand and notice for required restoration was duly and timely made.

The Government contends that restoration damages can and should be determined in this No. 2652 proceeding. The defendant contends that the Court has no jurisdiction to do so because the value of the property must be fixed at the time of taking, viz., November 7, 1950, and that in determining that value the Court cannot go back of that date to July 1, 1944, to ascertain the then condition of the property in order to fix the element of what is commonly described as restoration damages.

While the Federal Rules of Civil Procedure do not apply to condemnation proceedings except as to appeals, there is no reason why good sense should not apply in a condemnation matter, the purpose expressed in Rule 1 of F.R.C.P., 28 U.S.C.A., "to secure the just, speedy, and inexpensive determination of every action."

It is conceded by both parties that under the law the owner on a term-taking (i. e., less than the fee) is entitled to have the property restored to the condition it was in at the time of taking, or to receive therefor a compensatory amount which would enable him to place his property in that condition. The owner is now seeking to recover that sum in a separate suit in the Court of Claims. If under the law this Court has jurisdiction to try that question and determine it, it would certainly be more speedy and just and inexpensive than compelling the owner to try the condemnation action here for the value of Parcels 4 and 5 as of the date of taking in fee on November 7, 1950, and then in the Court of Claims later try the question of all restoration costs resulting from the previous taking.

The problem of fixing restoration costs on term-takings has not been and is not without its difficulties. To fix restoration costs at the beginning of, or during a term, requires speculation as to whether or not the Government will actually restore the property at the end of the term to its condition at the time of taking, and then, if the Government does not do so, requires speculation as to the actual cost of such restoration.

The problem of restoration costs here as to Parcels 4 and 5 is further complicated by the fact that the Government surrendered Parcels 4 and 5 at the end of term-takings on June 30, 1949, and was out of possession for more than 16 months before taking the entire fee on November 7, 1950. But it is not without solution as shall shortly appear.

It will be recalled that Action 2001 was to condemn an estate in Parcels 4 and 5 for a one-year term while the Government was still in possession by continuous occupancy under previous leases or term-takings.

While the practice of term-takings by condemnation has been regarded by some as novel during World War II, it appears that it had occurred also during World War I. The same perplexities were presented

to the Courts and Judge Trieber of the Eastern District of Arkansas, as early as 1918, in Condemnation of Lands For a Military Camp, D.C., 250 F. 314, 315, laid down a wise and just rule which permitted the substitution of known facts for speculation.

That was a proceeding to condemn, for temporary use, a large number of tracts of land which were to be used for a military camp. It was necessary for the Court to lay down instructions for the guidance of juries to be used in the trial of the various parcels. The Court laid down the rule that in addition to the rental payments and the like, the Government was obligated to surrender the land to the owner in as good condition as when it took possession, natural wear and tear excepted, and that if the lands were not returned in as good condition as when the Government took possession of them it was obliged to pay such damages as would enable the owner to put the land in as good condition as it was when the Government took possession. The Court there stated: "If the parties cannot agree upon the damages to be paid, if the government fails to put the land back in the condition it was, when it entered upon it, the court will, upon the application of either party, have a jury assess the damages, and for that purpose the court will retain jurisdiction of this cause. This, in the opinion of the court, is equitable and just to all parties, will protect the landowner, and will enable the government to make use of the land for military training, so necessary in this great emergency."

In U. S. v. 60,000 Square Feet of Land, D.C.N.D.Cal.1943, 53 F.Supp. 767, which was a proceeding for the condemnation of a term of years of hotel premises, Judge Goodman held that restoration costs must be decided in the condemnation proceeding.

In U. S. v. Certain Parcels of Land in the City of Baltimore, D.C.Md.1944, 55 F. Supp. 257, the Government sought to condemn an estate for a term of years. The petition in condemnation was filed on December 2, 1943, at which time the property was occupied by Bethlehem Steel under a lease from the Pullman Company, dated March 18, 1941, more than two years prior. The Court approved the doctrine announced by Judge Trieber in 250 F. 314 and held that the Government was obliged in that condemnation proceeding to restore, or pay the cost of restoring the property as of March 18, 1941, even though the condemnation proceeding was not filed until December 2, 1943.

In U. S. v. Five Parcels of Land in Texas, 5 Cir., 1950, 180 F.2d 75, the Government occupied the land under leases dated in the early part of 1941 for five-year terms. On November 14, 1942, or 21 months after the execution of the leases, the Government instituted condemnation proceedings for all of the leased lands, went into immediate possession of them under an order permitting it to do so, and two years later filed a declaration of taking. The Circuit Court there held that the parties, in establishing the value of the land on the date of taking under condemnation, viz., November 14, 1942, were entitled to reach back to the date of the entry under the leases in the early part of 1941 and be compensated for the changes in the character of the land, which in that case were called improvements.

In U. S. v. Westinghouse Elec. & Mfg. Co., 1950, 339 U.S. 261, at page 267, 70 S.Ct. 644, 648, 94 L.Ed. 816, the Court took cognizance of the difficulty involved in fixing values for indefinite periods of occupancy and approved the idea that in such condemnation proceedings elements of value such as restoration might be required to await the event of restoration, in the following language:

"Condemnation for indefinite periods of occupancy was a practical response to the uncertainties of the Government's needs in wartime. Law has sufficient flexibility to accommodate itself to these uncertainties by making what is a relatively minor item *await the event. To do so does not keep the litigation open longer than it has to be kept open, because the total award for the Government's occupancy cannot be determined until its duration is known. The usual rule for ascertaining value at the time of taking is not disrespected if one item is made a function of the future because only then can it be known whether that item forms a part of what has been*

'*taken.*' The alternative is to require a forecast of the possibility that the tenant will have to move back into the premises. The factors on which such a forecast must be based are too contingent, too unique for guidance by experience, to permit rational assessment. This is a situation where the law should express 'a judgment from experience as against a judgment from speculation'. Tanner v. Little, 240 U.S. 369, 386, 36 S.Ct. 379, 384, 60 L.Ed. 691. Or, as it was put by Mr. Justice Cardozo for the Court in a relevant situation: 'Experience is then available to correct uncertain prophecy. Here is a book of wisdom that courts may not neglect. We find no rule of law that sets a clasp upon its pages, and forbids us to look within.' Sinclair Refining Co. v. Jenkins Petroleum Process Co., 289 U.S. 689, 698, 53 S.Ct. 736, 739, 77 L.Ed. 1449.

"* * * So long as the duration of the Government's occupancy is undetermined, the District Court must necessarily retain the case *for the periodic determination* and payment of rental compensation. This is so in the absence of any problem arising out of removal costs. *No unfairness or embarrassment to the displaced tenant is thus involved by leaving liability based on removal to await the event.*" (Italics added.)

While the Westinghouse case involved "removal" costs there can be no distinction in reason or logic between "removal" costs and "restoration" costs.

■ From the foregoing it is concluded that the Court has jurisdiction in Case 2652 to determine the restoration damages, if any, to Parcel 2 for the reason that the Government was in continuous occupancy under leases from July 1, 1944, to the date of filing Case 2652 for condemnation of the fee on November 7, 1950.

But I am convinced from the foregoing authorities that in this case, No. 2652, the Court does not have jurisdiction to go back of the date of the fee taking on November 7, 1950, to determine the costs of restoring Parcels 4 and 5 to their condition on July 1, 1944, because of the hiatus in the possession or occupancy of the Government of more than one year from the time it surrendered possession on June 30, 1949, to the time the Government again took possession under its declaration of taking and the filing of the case, No. 2652, on November 7, 1950.

■ Again, it will be recalled that Case 2001 is still open, and while the rental value was fixed therein, jurisdiction was reserved to the Court. And it appears clearly from the foregoing authorities that this Court has jurisdiction in Case 2001 to try the element of restoration costs as to Parcels 4 and 5, and that such restoration costs, if any, should be the cost of restoration on the date of the Government's surrender of Parcels 4 and 5 on June 30, 1949.

Accordingly, it is hereby ordered that Case 2001 be consolidated for trial with the instant Case 2652 and set for trial on April 9, 1951, in this Court at 10:00 o'clock a. m.

For the guidance of the parties it is further ordered that as to Parcels 4 and 5 in Case 2652 the value to be assessed by the jury will be the value of Parcels 4 and 5 in their then condition on November 7, 1950, without regard to restoration costs.