UNITED STATES OF AMERICA, Petitioner

v.

2,095 ACRES OF LAND, MORE OR LESS,
Situate on the Island of St. Thomas, V. I.,
el al., Defendants

Civil No. 142 - 1948

District Court of the Virgin Islands

Div. of St. Thomas and St. John
at Charlotte Amalie

May 23, 1952

UNITED STATES DISTRICT ATTORNEY, for the United States Government, *plaintiff and appellant* .

MAAS AND BAILEY (WILLIAM W. BAILEY, of counsel), *for defendants Smith and Falck, and Berettas*

DUDLEY, HOFFMAN AND MCGOWAN (GEORGE H. T. DUDLEY, of counsel), *for defendants Scatliffes*

ASSISTANT DISTRICT ATTORNEY, *for defendant Municipality of St. Thomas and St. John*

MOORE, *Judge*

This matter came on for hearing as an appeal from the award of the commissioners appointed to determine the fair rental value of lands taken by the United States Government and used for a period of twenty-two and one-half months.

Exercising its power of eminent domain, and under the specific authority of Acts of Congress, the United States Government, acting through the Secretary of the Army, condemned, for a term of years, 2,095 acres, located at the West End of St. Thomas, for use as a military reservation in connection with the San Jose project of the Chemical Corps of the Army. The 2,095 acres comprised seven tracts of land under different ownership:

Tract No. 1 — Estates Botany Bay and Little St. Thomas — consisting of 388.9 acres and belonging to Messrs. Robert Smith and Richard Falck.

Tract No. 2 — Estate Bordeaux — consisting of 499.1 acres and belonging to Winthrop Hughue, et al.

Tract No. 3 — Estate Fortuna — consisting of 648.7 acres and belonging to Angelo de Lugo, et al.

Tract No. 4 — Estate Bethesda — consisting of 16.2 acres and belonging to Samuel Scatliffe, et al.

Tract No. 5 — belongs to the United States Government and is, therefore, not involved in the case.

Tract No. 6 — Estate Hope — consisting of 229.2 acres and belonging to the Municipality of St. Thomas and St. John.

Tract No. 7 — Estate Perseverance — consisting of 139.8 acres and belonging to Fortunato Beretta, et al.

The United States Government, plaintiff in the original suit and appellant here, was represented by the United States District Attorney, and the owners were all made parties defendant and are before the court as appellees. Attorneys Mass & Bailey, William W. Bailey, Esq., of counsel, represented defendants Smith and Falck, owners of tract No. 1, defendants Hughues, owners of tract No. 2, and defendants Berettas, owners of tract No. 7. Attorneys Dudley, Hoffman and McGowan, George H. T. Dudley, Esq., of counsel, represented defendants Scatliffes, owners of tract No. 4. The Assistant District Attorney represented the municipality, owners of tract No. 6, but did not contest the award. Defendants Lugos, owners of tract No. 3, withdrew from the suit. No award was necessary for tract No. 5 which already belonged to the United States Government.

In August of 1948 the United States Government sought to condemn all of this land for a term of years, ending June 30, 1940 and extendible yearly until June 30, 1954, at the election of the United States Government which retained the right to remove any and all improvements. The Government was given immediate possession and later deposited the sum of $2,535.20 in court as just compensation for the aggregate area for the period from August 25, 1948 to June 30, 1949 and $2,395.21 for the period from July 1, 1949 to June 30, 1950. Subsequently, both the parties defendant and plaintiff joined in a motion to have commissioners appointed by the Court, under section 10, chapter 20 of the Municipal Code (1921, Code, Title II; 28 V.I.C. § 418), to determine the fair annual rental value of the condemned tracts of land. This motion was granted and on September 18, 1951, the commissioners filed their award. After viewing the land and hearing the testimony of witnesses and arguments of counsel, the commissioners found the following to be the "reasonable annual rental" for the various estates:

| Botany Bay | (388 acres) | $ 853.90 annual rental |
| Bordeaux | (499 " ) | 1,060.93 " " |
| Fortuna | (648 " ) | 1,357.73 " " |
| Bethesda | ( 16 " ) | 32.40 " " |
| Hope | (229 " ) | 389.00 " " |
| Perseverance | (139 " ) | 394.65 " " |

It is from this award of the commissioners that the United Etates Government has appealed.

■ The first question before the Court is whether this appeal is in the nature of a trial de novo or is merely a review of the award made by the commissioners.

Counsel for defendants argues that in an appeal from the findings of commissioners appointed by the Court, the Court is limited in its review to plain errors of law,

misconduct or gross errors of fact. Cypress Co. v. United States, 65 F.2d, 711. While this principle may be the prevailing law in the absence of statute, where there is a statute on the subject, as in this case, the statute controls.

The commissioners were appointed under authority of chapter 20 of the Municipal Code, and section 14 of said chapter (1921 Code, Title II; 28 V.I.C. § 418), provides that:

"An appeal from any assessment made by the Commissioners may be taken and prosecuted in the court where the report of the commissioners is filed by any party interested . . . and the same shall be brought on for trial upon the same notice and in the same manner as other civil actions; and the same shall be tried and the damages to which appellant shall be entitled by reason of the appropriation of this property shall be reassessed upon the same principle as hereinbefore prescribed for the assessment of such damages by commissioners."

The Code further provides as to "other civil actions" mentioned above, to wit, civil actions in the police court, as follows:

"Upon the filing of the transcript with the Clerk of the District Court the appeal is perfected, and the action shall be deemed pending and for trial therein as if originally commenced in such court, and the District Court shall proceed to hear, try, and determine the same anew, without regarding any error or other imperfection in the original summons and the service thereof, or on the trial, judgment, or other proceeding of the Police Court." Sec. 9, chap. 87 (1921 Code, Title III; 4 V.I.C. § 33).

Since the Court is clearly directed by chapter 20, section 14, to "reassess" the value of the property, an appeal from the commissioners' award amounts to a trial de novo. The Court, therefore, heard the testimony of witnesses for plaintiff and defendants as well as the arguments of counsel, and has taken into consideration all of the evidence before it in determining the just compensation due to the owners in this case.

■ The Government sent its own appraiser to the island who personally inspected the land, assessed the value of each tract and set up a scale of rental values for each, which formed the basis of the Government's deposit.

The Government's appraiser testified that, while he had in fact personally inspected the land very carefully and had actually assessed the value of each tract, his estimate of the rental value had no relation to the value of the fee but was based solely on two previous leases of land in that vicinity (Estates Bordeaux and Hope). He further admitted that he had considered only the uses to which the properties in question were *then* being put and also, that he had not taken into consideration leases of land in other parts of the island, for he had found none of a comparable nature. The commissioners did not find the past leases a satisfactory basis for determining a reasonable return on the properties at the date of taking and in the absence of other indicia of rental value made their award on the basis of a capitalization of the value of the properties as assessed by the government's appraiser. On this basis they arrival at an overall award of 5% of the appraised value as a "fair return" for unimproved land, including provision for payment of taxes.

The Court has carefully considered the testimony presented in this case and the various theories adduced by counsel for determining fair rental value. The Court recognizes that the authorities are sparse where less than a fee is taken and also that the whole question of valuation in condemnation proceedings is governed by few general principles and that even such principles as appear well established yield to exceptional circumstances in particular cases. Accordingly, counsel on both sides and for the various defendants have put forth different circumstances as controlling and determinative of the application of differ-

234

ent concepts of evaluation. It is, therefore, necessary for the Court to review the theories advanced.

■ The Goernment argues that market value is the only test which the Court may apply in condemnation cases to determine "just compensation" to the property owner. Counsel further argues that market value is the test whether a fee or a lesser interest is taken and that capital investment is not a factor in market value, although a showing of the value of improvements may be relevant. When less than a fee is taken, the market value of the use of the land during the period for which it is used becomes the test and, in this respect, prior or existing leases are determinative.

On the other hand, counsel for defendants contend that when the Government takes a leasehold, and not a fee, it is the fair annual rental value which must be found, and that this is determined by a consideration of all factors which bear on the value and uses of the land. "Where land is taken in condemnation only for a temporary use, the measure of compensation is not the market value, but what the property is fairly worth for the time during which it is held." United States, v. Certain Parcels of Land in Los Angeles, 63 F. Supp. 175.

In 1943 the United States Supreme Court gave extensive consideration to the question of compensation in condemnation cases and it might be well to quote from its opinion in United States, v. Miller, 317 U.S., 369, 63 S. Ct. 276, 87 L. Ed., where the court said:

"The Fifth Amendment of the Constitution provides that private property shall not be taken for public use without just compensation. Such compensation means the full and perfect equivalent in money of the property taken. The owner is to be put in as good position as he would have occupied if his property had not been taken.

"It is conceived that an owner's indemnity should be meas-

235

ured in various ways depending upon the circumstances of each case and that no general formula should be used for the purpose. In an effort, however, to find some practical standard, the courts early adopted, and have retained the concept of market value . . .

"Where for any reason, property has no market value, resort must be had to other data to ascertain its value; and even in the ordinary case, assessment of market value involves the use of assumptions which make it unlikely that the appraisal will reflect true value with nicety. It is usually said that market value is what a willing buyer would pay in cash to a willing seller. Where the property taken, and that in its vicinity, has not in fact been sold within recent times or in significant amounts, the application of this concept involves, at best, a guess by informed persons."

■ On the strength of this opinion, which is often cited by other courts, e.g., Washington Water Power Co., et al., v. United States, 135 F.2d 541, this court is inclined to agree with counsel that this is a proper case for "resort to other data".

Where, as here, there have been no sales in the locality, one of the most used criteria in determining market value is missing. It is accepted, as we have pointed out, that in such instances reasonable value may be established by other means. In this respect, counsel for defendants contends that it is only when the renting of property is its best use, or at least a plausible use, that the realized or estimated rentals are a successful guide to the appraiser. Arguing that not only were the leases on which the government appraiser based his valuation old and vague, but that they did not constitute the best use of the property, counsel suggests that a comparison with values outside the district should be made. The Government did not deny that this would be a reasonable means of arriving at just compensation, but its appraiser testified that he had not found any comparable land elsewhere in the island. Defendants presented evidence to establish the comparability of certain lands in the East to the section under condemnation in

the West. However, even if conceded that this land in the East is comparable as to type, development, use and accessibility, the Court considers the evidence as to the rental value of this land as inapplicable to this case since the rents testified to in court are those paid by homesteaders to the Government. In the Court's opinion homestead rentals cannot be used as a basis of fair rental value since homesteads are a means of government subsidization of those unable to obtain land on the market and, therefore, the nominal rents paid by homesteaders cannot be taken as a standard of rent for that type of land. It should be noted, however, that these homestead rentals are even higher than the estimate made by the Government appraiser for the land in question and the amount deposited.

Another proposition put forth by counsel is that when land is uncultivated, reasonable rental value is the prevailing rate of interest on the fair value of the property. In re: Condemnation of Lands for Military Camp, 250 Fed. 314.

It is uncontested that the majority of land under condemnation is uncultivated, only some of it being in pasture land. Therefore, it is argued that this formula should apply, counsel for defendants concluding that where there is no evidence as to fair market value or rental, a "capitalizing" is the only method by which just, fair compensation can be arrived at. In support of this proposition, counsel cites the case of United States v. 5174 Acres, 51 F. Supp. 147, in which the court made a finding of the market value of the land and improvements and then capitalized this at 10% to arrive at the "fair market rental value" per annum.

The Court is of the opinion that the usual tests of market value are not controlling in this case, since a fee was not taken, and that the owners should be compensated for the reasonable use of their land for a term of years. The Court is further of the opinion that the rental value of this land cannot be determined, solely, on the basis of the

two leases relied upon by the Government since these leases were not for the exclusive use of the land as in the case of the Government's taking. The leases cited by the Government had not only terminated several years ago when land values were lower, but granted to the lessee limited use of the properties, reserving to the lessors the right to go on the land, free use of the beaches, and such other privileges; whereas, under the Government's terms the owners were not permitted any access to their properties. It, therefore, seems clear that these leases do not reflect the full rental value of these properties during the period for which they were taken, and that the rental value fixed by the commissioners herein as a reasonable return upon the fair valuation of the properties, which was arrived at by taking 5% of the valuation as estimated by the Government appraisers as reasonable annual rental, is a more just and equitable approach to the fair return value, Consequently, in addition to these leases which the Court feels are not wholly adequate, the Court has also taken into consideration all of the other elements advanced by counsel and from the overall picture is of the opinion that the award of the commissioners constitutes a fair and just compensation for the use of the land on a yearly basis. The Court is also of the opinion that this award constitutes the fair market rental of the land.

The Court, therefore, makes the same award of the commissioners, to wit:

| | |
|---|---|
| Botany Bay | $ 853.90 per year |
| Bodreaux | 1,060.93 " " |
| Fortuna | 1,357.73 " " |
| Bethesda | 32.40 " " |
| Hope | 389.00 " " |
| Perseverance | 394.65 " " |

■ Defendants also ask for damages for the destruction of the road, which is the only means of access to their property. Defendants admit that the road does not belong to them; that it is the property of the Municipality which has the duty and obligation for its maintenance and repair. Defendants argue that when the Government condemned the 2,095 acres, it prohibited use of the road by any civilians, including representatives of the Municipality, and, therefore, that in so doing the United States Government assumed the responsibility of the Municipality for the upkeep of the road. Defendants presented evidence to prove that the road was allowed to deteriorate to a state of utter disrepair making it impassable to motor vehicles and thereby cutting off the only access of property owners in the West to their land. It was also testified to by the Superintendent of Public Works that this condition of the roads was not the result of normal wear and tear, but of lack of use and ordinary maintenance and that the damage caused thereby amounted to a sum between $2,500.00 and $3,-000.00.

Under these circumstances, defendants pray for recovery of the damages to the road in that they are entitled to be placed in the same or similar position as they were at the time of taking. Defendants contend that since they have suffered peculiar injury by the destruction of the road, they have a right of recovery for damages where the Municipality fails to act or interest itself in the matter and, in the event that they do not apply the sum recovered to the repair of the road, it is for the Municipality to take action against them. However, these defendants have no right to sue the Federal Goernment in the name of the Municipality, neither have they any right to recover money from the Federal Government and then have the Municipality sue them. It is clear, also, that they have no right to force the Municipality, by lawsuit, to repair

239

certain roads, it being within the discretion of the Municipality to repair such roads as it deems fit.

The Court agrees with the contention of defendants that the damage to the road has caused them great inconvenience and may actually have resulted in a decline in the value of their property by making it more inaccessible, but the Court finds no authority for granting damages of this nature to defendants in an action of this kind. In Mitchell v. United States, 267 U.S. 341, 45 S. Ct. 293, 69 L. Ed. 644, the Supreme Court of the United States declared that "the settled policy of Congress, in authorizing the taking of land and appurtenances, has been to limit the right to compensation to interests in the land taken." Defendants have no property interest in the road nor can they recover on the basis of consequential damages as the Supreme Court stated its opinion in this matter to the effect that consequential losses or injuries resulting from the taking are not compensable under the Fifth Amendment (U.S. Const. Amend. 5). Mitchell v. United States, supra; United States v. Miller, 317 U.S. 369, 376, 63 S. Ct. 276, 87 L. Ed. 336. Recognizing that "not all losses suffered by the owner are compensable under the Fifth Amendment" as the Supreme Court again said in United States ex rel. TVA v. Powelsen, 319 U.S. 266, 281, 63 S. Ct. 1047, 87 L. Ed. 1390, this court denies the prayer of defendants for damages to the road.

The decree may be drawn in accordance with this opinion.