**UNITED STATES of America,
Petitioner-Plaintiff,**

v.

**765.56 ACRES OF LAND, MORE OR LESS, IN the TOWN OF SOUTHAMP-TON, SUFFOLK COUNTY, NEW YORK, and Salvatore Aleci, et al., Defendants.**

**No. C. P. 108.**

United States District Court
E. D. New York.
July 24, 1958.

---

Harry T. Dolan, Special Asst. to the Atty. Gen., for petitioner-plaintiff.

Solomon Raffe, Riverhead, N. Y., for defendants Anna Stachiw and Harry Stachiw, Lamb & Lamb, and William Lamb, New York City, of counsel.

Thomas M. Stark, Riverhead, N. Y., for defendant Edward F. Wright, Lamb & Lamb, and William Lamb, New York City, of counsel.

Lamb & Lamb, and William Lamb, New York City, for defendants Fanny Danowski and Anthony P. Danowski.

INCH, District Judge.

This condemnation action was instituted on April 30, 1957. On May 1, 1957, an order for possession was entered, to the extent of the interests sought to be acquired. On September 24, 1957, the action was dismissed insofar as it sought to acquire temporary easements for access road purposes on all of the tracts involved, with the exception of Tract B-205-E, insofar as this opinion and decision is concerned. On May 15, 1958 a Declaration of Taking was filed covering 30 tracts of the original 39 tracts involved in the action, and on the same day the complaint was amended to conform to the revised estates and interests acquired under the Declaration of Taking.

The nature and extent of the estates and interests acquired in this action consists substantially, as to all parcels, of the right to prohibit the future construction of buildings or structures and to prevent natural growth from growing on the land which would extend into or above the glide surface and/or transitional surface, as described in the complaint, as amended, and Declaration of Taking. The Government also acquired the right to remove and to raze portions of hills, embankments of earth and other materials presently extending into the airspace so restricted, as well as the right to cut to ground level, to remove and to prohibit the growth of trees, bushes, shrubs, etc., which might extend into the restricted airspace. There was reserved to the landowners, their heirs, executors, administrators, successors and assigns, all right, title, interest and privileges, as may be enjoyed in the land or existing structures without interference with or abridgment of the rights and interests taken.

There was also taken in connection with certain of the tracts involved in this action, "the temporary right to continue in effect until July 31, 1958, of access and passage * * * to adjoining tracts, including the right to construct temporary roads for such purposes." The temporary access road easement was only exercised by the Government, insofar as this decision is concerned, as to Tract B-205-E.

Notice of Inquest, for the purpose of hearing and determining the issue of just compensation to be paid for the rights and interests appropriated in these parcels, was filed and served upon owners or their attorneys on February 18, 1958, and such inquest was set for May 20, 1958. The inquest was thereafter adjourned to June 23, 1958, and at that time the owners of only three of these tracts appeared and offered testimony concerning the damages sustained as a result of the easements taken, or submitted claims for just compensation therefor. The tracts as to which proof was offered on the issue of compensation were: B-205-E; B-206-E; B-209-E.

The lands involved in this action and which were subjected to the easements

above described are located in the Town of Southampton, Suffolk County, New York. With the exception of Tracts B-205-E, B-206-E, and the southerly 30-odd acres of Tract B-209-E, all of the lands involved in these easements constitute uncleared, unimproved, sandy scrub oak land and upon which no structures or buildings have ever been erected. However, Tracts B-205-E and B-206-E, comprising 43.70 and 3.90 acres respectively, were farmlands which were largely cleared, cultivated and improved with residences and farm buildings. It was likewise true that approximately the southerly 40 acres of Tract B-209-E (91.-70 acres) were also cleared and under cultivation and constituted a portion of a larger parcel of farmlands extending southly beyond the line of the Government taking. On this part of the tract there were no buildings or improvements.

The three parcels (B-205-E, B-206-E and B-209-E), which were used in whole or in part for agricultural purposes, consisted of a fair grade of soil which has been classified by the Department of Agriculture of the United States Government as Duke's Loamy Sand. This type of soil, when irrigated and properly fertilized, is well suited to the growing of crops, such as potatoes, cauliflower, etc.

On Tract B-205-E there were three buildings;—one a residence and two barns. One of the barns was cement block construction and the other frame construction. On Tract B-206-E there was only one building,—a one and one-half story residence about five years old at the time of institution of this action. With the exception of Tracts B-205-E and B-206-E, none of the lands within the area of taking and involved in this decision had public road frontage. It was conceded that the highest and best use for which there was any present demand or market for the land embraced within Tracts B-205-E, B-206-E and the southerly part of B-209-E, was for agricultural or farm use and that the highest and best use of the remaining land was for future residential development. It

appears that the present demand and market for this land, other than farmland, is largely speculative. It did not appear that any of the land within the area of the taking had been the subject of any recent improvement or development.

The easements acquired by the Government in this action were appropriated in connection with expansion of the Air Force facilities at the Suffolk County Airfield and the relationship of this land to that Airfield undoubtedly had a significant bearing upon the market value of the land at the time of the taking of these easements by the Government, as well as the lack of residential development within the area involved. The testimony discloses that the Suffolk County Airfield was originally constructed by the County of Suffolk about the year 1939 as a local county project. As originally constructed, the dominant and principal runway at this field was the northeast-southwest runway, which had a total length of 5,064 feet. As now extended, the northeasterly end of this runway is about 3,000 feet southwest of Tracts B-205-E and B-206-E. (Gov. Exh. 14) The land here involved and concerning which the present easements have been imposed, is in the direct line of flight or flight pattern of planes taking off or approaching this runway, so it can be reasonably assumed, from the evidence, that since the year 1939, the value of this land and its utility have been somewhat adversely influenced and affected by its proximity to this Airfield and the flight of aircraft over this land.

About the year 1941 this Airfield was leased by the Government from the County of Suffolk and during the War period—from about the year 1941 to the year 1945—was used by the Air Force. It can be reasonably assumed that the number of flights of aircraft from this field during the War period was very substantial,—both as to take-offs and landings. In about the year 1953, while still under lease to the Government, the dominant and principal

runway was expanded and extended to the northeast, a distance of approximately 2,000 feet. During the same year the Government acquired by condemnation or by direct purchase avigation easements covering substantially all of the land involved in the present proceeding. (Govt. Exhs. 5, 7 through 16) These avigation easements extended for a future period of twenty-five years. Under these easements the Government acquired an easement and right-of-way for the free and unobstructed passage of aircraft in, through and across the airspace above the glide angle plane and over the lands within the runway approach zone therein established. In addition to this easement for the free and unobstructed flight of aircraft, the Government also acquired an obstruction easement which granted to the Government the right to clear and to keep clear the said land of any and all obstructions infringing upon or extending into the glide angle plane and for this purpose, to cut and remove trees, underbrush and soil, and to demolish and remove buildings or any other structures or obstructions infringing upon or extending into or above said plane. (Govt. Exhs. 5, 7 through 13, 15)

The lower elevation of the airspace reserved for the free and unobstructed flight of aircraft and above which no obstruction of any character could be permitted under the avigation easement of 1953, was approximately 25 feet above the elevation of the airspace which must remain unobstructed as a result of the easements taken in this action. (Govt. Exh. 1) The evidence disclosed that as to Tract B-205-E, the average height elevation of the airspace reserved in 1953 for a period of twenty-five years, for the free and unobstructed flight of aircraft in the approach zone to this northeast-southwest runway, was 47 feet above the land, and above which elevation it was further provided no obstruction of any character might intrude. The obstruction easements imposed in this action and affecting the same tract reduced

this elevation to an average of approximately 22 feet. The elevation of the airspace reserved for the flight of aircraft and which must remain unobstructed under the 1953 avigation easement, as well as the elevation of the airspace which must remain unobstructed under the easements taken in this action, necessarily varies considerably, due to the irregular contour of the land, but the averages set forth herein represent the mean average between the high and low elevations of this plane or surface.

With reference to Tract B-206-E, the average height of the 1953 avigation easement was 48 feet, whereas the obstruction easement taken in this proceeding reduced the elevation of the airspace which must remain unobstructed, to an average height of 23 feet above the land.

In connection with Tract B-209-E, in the northerly 50 acres of the parcel of 91.70 acres herein involved, the contour of the land was very irregular, due to the presence of several comparatively high hills located in this area. As a result of this irregular contour and the presence of hills, the height of the avigation easement above the ground surface, under the 1953 easement, ranged from minus 2 feet to plus 55 feet. The airspace affected by the same easement in the southerly 41 acres, which was more level and a large portion of which was cleared and cultivated, ranged from 37 feet to 94 feet. The present obstruction easement in these same areas has been reduced by approximately 25 feet. (Govt. Exh. 1)

The defendants' witness Sankin contended that in the northerly wooded area of Tract B-209-E there were substantial deposits of sand and gravel which could be excavated and sold profitably, although he did not appraise the land on the basis of the value of these deposits. It would appear, however, that the easements taken will not preclude or prohibit the owners from removing such sand and gravel, if found to be a profitable opera-

tion. Even if this land were to be used for a housing development, considerable grading and reduction of elevations would be required because of the hills and irregular contour of the land in this area.

The average height of the airspace above the land level prohibited from future obstruction under the easement appropriated in this action, as it affects the remaining parcels now the subject of inquest is as follows:

| Tract | Area | | Average Height—1957 Obstruction Easement | |
|---|---|---|---|---|
| B-210-E | 12.40 | acres | 76 | feet |
| B-215-E | 10.20 | " | 54 | " |
| B-219-E | .06 | " | 76 | " |
| B-220-E | .06 | " | 76 | " |
| B-225-E | 1.18 | " | 66 | " |
| B-229-E | .38 | " | 46 | " |
| B-233-E | .43 | " | 58 | " |
| B-235-E | .11 | " | 61 | " |

The avigation easement of 1953 apparently did not affect Tracts B-219-E; B-220-E; B-225-E; B-229-E; B-233-E and B-235-E.

The purpose of this opinion is to fix and determine the just compensation which should be paid by the Government for the interests and estates appropriated in this action and excluding any depreciation or diminution in value to these lands which resulted from the 1953 avigation easements, which encumbered this land at the time of filing of the instant action, and also excluding any diminution or depreciation in the value of this land as a result of its proximity to the principal runway of the Suffolk County Airfield and which may have resulted from the flight of aircraft taking off or landing on this airstrip. In other words, the question presented is the extent of the depreciation or diminution in the value of this land which has resulted from any impairment of its present or future utility, by reason of the height limitations imposed for the erection or construction of buildings or structures in the future, or by reason of the limited height to which trees or natural growth may extend into the airspace above the land, or resulting from

temporary access roads constructed on the lands.

■ We are not here concerned with any claimed damage or depreciation in the value of this land resulting from or which may be incidental to the flight of aircraft over this land at frequent intervals or at low levels, for such rights have not been taken or appropriated by the Government in this action. United States v. 48.10 acres, D.C.S.D.N.Y.1956, 144 F.Supp. 258; United States v. 4.43 acres, D.C., 137 F.Supp. 567; Cf. United States v. 26.07 acres, D.C.E.D.N.Y.1954, 126 F.Supp. 374; United States v. 51.8 acres, D.C.E.D.N.Y.1957, 151 F.Supp. 631, affirmed United States v. Jones Beach State Parkway Authority, 2 Cir., 255 F.2d 329.

The nature and character of the obstruction easements taken by the Government in this action are not unlike or dissimilar to obstruction easements taken in connection with military installations known as "Nike" or Guided Missile Sites, and it is believed that the same principles of valuation apply. United States v. 72.35 acres, D.C.E.D.N.Y.1957, 150 F.Supp. 271; United States v. 102.93 Acres, D.C.E.D.N.Y.1957, 154 F.Supp.

258, affirmed United States v. Fox, 2 Cir., 257 F.2d 805.

■ At the time of the institution of this condemnation action, the lands here involved were entirely without zoning. Zoning regulations had been under consideration, however, for some time, and of course it is necessary, in appraising rights of this character and lands of this nature, to consider the possibility and probability of the future use of this land for housing and residential purposes and the appropriate zoning for such use. United States v. 50.8 acres, D.C.E.D.N.Y. 1957, 149 F.Supp. 749. The testimony shows that at the time of trial such zoning had become a fact and that the lands are now zoned for residential and agricultural purposes, with a height limitation of 35 feet for any buildings or structures.

The testimony established that the easements taken by the Government in this proceeding will not interfere with or cause any demolition, removal, relocation or modification of any existing buildings or structures, and, with the exception of relatively small areas, will not seriously interfere with the construction of typical and conventional type structures in the future.

■ The valuation of the obstruction easements taken here should reflect the depreciation in the land value which flows from the impairment of the utility of the land for its highest and best use. United States v. 48.10 acres, supra. Such impairment of the land's utility, insofar as the air easements are concerned, must here be restricted to the height limitation of future construction or natural growth upon the land. United States v. 48.10 acres, supra; United States v. 72.35 acres, supra. In estimating such damage, consideration must be given to the conceded highest and most profitable future use of the land, as well as zoning restrictions and regulations,—either present or prospective,—and also to the typical height of the conventional buildings and structures which it can be an-

ticipated might be built upon the land in the future. The conceded highest and best use of Tracts B-205-E and B-206-E was for agriculture. This was likewise true as to approximately half of Tract B-209-E. The remainder of the land under consideration was unsuitable for agriculture and had only a possible and speculative utility for housing at some remote future time.

■ In fixing the damage or compensation for the temporary access road across Tract B-205-E, consideration must be given to the fact that this easement is still in effect and will continue to July 31, 1958. Upon expiration of this easement, the Government will be required to restore the land so used to its former condition as farmland, or pay compensation in lieu thereof. United States v. 14.4756 acres, D.C.Del.1947, 71 F.Supp. 1005; Brooklyn Waterfront Terminal Corp. v. United States, 1950, 90 F.Supp. 943, 117 Ct.Cl. 62; United States v. 37.15 acres, D.C.Cal.1948, 77 F.Supp. 798; United States v. Jordan, 6 Cir., 1951, 186 F.2d 803, 806. The proof also shows that the Government's contract to provide the facilities for which the temporary access road was taken, obligates the contractor to restore the land so used to its former condition. Since the easement has not terminated and the obligation to restore has not arisen, the claim asserted by the owner of Parcel B-205-E in this regard is premature and must be disallowed.

The owners of Tracts B-205-E, B-206-E and B-209-E relied upon one real estate appraiser, Mr. Irvin Sankin of New York City, to estimate and appraise the easements appropriated. It was not shown that he had ever engaged in the real estate business in Suffolk County and had previously made but one appraisal in that county, which was a small residence plot. He failed to inform the court of any sales of land in that county or in the vicinity of the taking to support his opinions of land value before the taking of the easements, although

he conceded that a number of sales may have occurred in recent times in the immediate neighborhood. His "before values" of the land were without any factual substantiation. It was shown that a number of sales had recently been made of adjoining lands and parcels within the perimeter of the project under consideration, but the defendants' witness had apparently not investigated these sales. It also appeared that this witness had made no prior appraisals of easements such as were involved here and attributed his estimate of damages largely to depreciation claimed to result from the flight of aircraft over the land and that such flights caused the buildings to be uninhabitable and unuseable, necessitating their removal or relocation, leaving only a salvage value to these structures.

It appears from the testimony that this witness had clearly misinterpreted, misunderstood, or was misinformed, as to the nature and extent of the interests taken. He erroneously assumed that the present easements taken by the Government had the effect of extending the avigation easements taken in 1953 in perpetuity, but with a lowered elevation of the airspace affected. This assumption is clearly contrary to the language of the estates and interests here taken and to the judicial construction which has been placed upon such easements. United States v. 48.10 acres, supra; United States v. 4.43 acres, supra. It further appears that he was instructed by counsel to treat these easements as the equivalent of the taking of the fee. We, however, are not valuing easements which involve the right of flight of aircraft—present or prospective—over this land. This right or easement is not here involved, but such rights were acquired by the Government over substantially all of this land for a future period of twenty-five years during the year 1953, and such easements and their depreciation on the value of this land existed at the time the present easements were taken. The witness further estimated a

very substantial part of the damage claimed for Tract B-205-E, upon the assumption that the access road easement was of a permanent character, which divided the farm into two parts, and that the cost of restoration would be prohibitive. As has been previously shown, this element of damage must be denied, for the easement has not yet terminated, and upon its termination there will be an implied obligation on the part of the Government to restore this land to its former condition. Until the Government fails to comply with this obligation, any claim to damage would be premature.

Some testimony was submitted by the defendant Stachiw (Tract B-205-E) that he had suffered some damage to crops resulting from the Government's use of the access or temporary road constructed across this parcel. His testimony indicates that he had never discussed this claim with the acquiring agency of the Government,—the Corps of Engineers, U. S. Army,—or with the contractor who built and used this road; in fact, he testified that he had never told anybody about this claim. His testimony is not considered adequate to support any award to compensation for this alleged damage and the brief submitted by his attorney does not indicate that he is pressing this claim.

■ The witness for the three owners, who testified before the Court, has confused the valuation of an avigation easement which involves the taking of a right for the free and unobstructed flight of aircraft, as well as prohibiting the airspace involved from obstruction, with simple obstruction easements such as were appropriated in this proceeding. It appears clear from his testimony that his appraisals and estimates of damage are largely, if not entirely, based upon unwarranted and unjustified theories of law and assumptions of fact and, as such, must be completely rejected by the Court. United States v. Honolulu Plantation Co., 9 Cir., 1950, 182 F.2d 172, 178, certiorari denied 340 U.S. 820, 71 S.Ct.

51, 95 L.Ed. 602; United States v. 102.93 acres, supra.

■ The burden of proof rested upon the owners and not upon the Government to establish the damage sustained as a result of the easements taken, by a fair preponderance of the evidence, and upon opinions having a rational foundation. Westchester County Park Commission v. United States, 2 Cir., 1944, 143 F.2d 688, certiorari denied 323 U.S. 726, 65 S.Ct. 59, 89 L.Ed. 583. The Court finds that the defendants who have offered proof in this proceeding have failed in sustaining such burden of proof. It further appears from the testimony that any depreciation or diminution in the market value of the lands here involved, resulting from the low and frequent flight of aircraft over this land, has existed for many years prior to the present taking and by reason of the proximity of this land to the Suffolk County Airfield. It further appears that any damage attributable to the low flight of aircraft over this land, within the airspace reserved for such flights in the 1953 easement, could not be compensable here. The evidence failed to show that flight of Government aircraft from this air base and over the lands here involved violates in any manner the rights which it acquired to fly such aircraft under the 1953 avigation easements.

The Government has submitted to the Court, in support of its claims to compensation, the testimony of Mr. Frank J. Smith of Riverhead, Long Island. Mr. Smith has appeared before this Court on a number of occasions and has had considerable previous experience in appraising obstruction easements of the type here involved. He has been engaged in the real estate business in Suffolk County for the past twenty-four years as a real estate broker, and during that time has bought and sold many parcels of land as a broker and for his own account. During the past six years he has appraised some 17,000 acres of land in Suffolk County, which involved all types of lands located there. In determining the value of the property taken, before the imposition of the easements, he relied upon some twenty-seven sales of nearby properties as a basis of estimating the unit value of the lands here involved, and testified as to some ten specific sales, a number of which were located within the project under consideration and several of which were subject to the 1953 avigation easements.

■ Mr. Smith has impressed this Court as being a real estate appraiser of wide experience in Suffolk County and an appraiser whose judgment and opinions merit serious consideration. The Court has largely relied upon the testimony of Mr. Smith as a basis for its findings and conclusions as to just compensation, which are fixed and determined to be as follows:

TRACT B-205-E   (Stachiw)—43.70 acres

Value before Taking:

| | |
|---|---|
| 15 acres woodland @ $400. per acre— | $ 6,000. |
| 28.70 acres cleared tillableland @ $900 per acre | 25,830. |
| Value of buildings not affected | |
| Total value before Taking: | $31,830. |
| Depreciation attributed to obstruction easement—10% | $ 3,183. |
| Value of temporary access road easement, expiring July 31, 1958—2-Yr. term—(2-ac.) Rental $40. per acre per annum | 160. |
| Just Compensation | $3,343.00 |

TRACT B-206-E (Danowski)—3.90 acres

Value before Taking: (Land Only)

| | |
|---|---|
| Homesite—250′ x 250′—1.44 acres | $3,000. |
| Balance—2.46 acres @ $1,200. per acre | 2,952. |
| Value of residence not affected | |
| Total value of land before Taking: | $5,952. |
| Depreciation due to easement—30%— | $1,785.60 |

Just Compensation ................$1,785.60

TRACT B-209-E (Wright)—91.70 acres

Value before Taking:

| | |
|---|---|
| 60 acres interior woodland @ $200. per acre | $12,000. |
| 31.70 acres cleared tillable land @ $800. per acre | 25,360. |
| Total Value before Taking: | $37,360. |

Depreciation due to easement taken:
| | |
|---|---|
| 60 acres—25% | $3,000. |
| 31.7 acres—5% | 1,268. |

Just Compensation .................$4,268.

TRACT B-210-E (Kijowski)—12.4 acres    Just
Compensation $25.00
(Nominal damage)

TRACT B-215-E (Phillips)—10.2 acres

Value before Taking:

| | |
|---|---|
| 10.2 acres @ $200. per acre— | $2,040. |
| Depreciation due to easement—20% | |

Just Compensation $408.00

| Tract | Area | | Just Compensation | |
|---|---|---|---|---|
| B-219-E (Soriero) | .06 | acres | $10.00 | (Nominal damage) |
| B-220-E (Theodore) | .06 | " | 10.00 | " " |
| B-225-E (Minerva) | 1.18 | " | 10.00 | " " |
| B-229-E (Williams) | .38 | " | 10.00 | " " |
| B-233-E (Sloman) | .43 | " | 10.00 | " " |
| B-235-E (Williams, et al.) | .11 | " | 10.00 | " " |

I viewed and inspected these properties and the surrounding neighborhood on July 21, 1958.

Settle order.